**In re RELIANT CONTRACTORS, INC., Debtor.**

**Sherry F. Chancellor, Trustee, Plaintiff,**

v.

**Jones Carpet and Rug Gallery, Inc. and Jones Carpet Mart, Inc., Defendants.**

**Bankruptcy No. 00–42009–PNS3. Adversary No. 00–80050.**

United States Bankruptcy Court, N.D. Florida.

April 12, 2001.

---

Sherry F. Chancellor, Trustee, and Thomas Morton, Pensacola, FL, for Plaintiff.

Artice McGraw, Pensacola, FL, for Defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND AWARDING JUDGMENT IN FAVOR OF THE PLAINTIFF, SHERRY CHANCELLOR

MARGARET A. MAHONEY, Chief Judge.

This case is before the Court on the motion of the trustee for rehearing. On March 21, 2001, the Court entered a judgment in favor of the defendants, Jones Carpet and Rug Gallery, Inc. and Jones

Carpet Mart, Inc. (Jones Carpet) in this preference case. The Court's ruling indicated that the trustee had proved all of the elements of a preference pursuant to 11 U.S.C. § 547, except the element at § 547(b)(5). That section requires the plaintiff to prove that, due to the payment to the creditor within 90 days of the bankruptcy filing, the creditor received more than it would in a chapter 7 case.

### FACTS[1]

In this case, Jones Carpet was paid $24,821.18 on October 2, 2000. Reliant Contractors filed bankruptcy on October 3, 2000. The monies paid fourteen liens which Jones Carpet had placed against homes sold by Reliant. The money was paid from the proceeds of two closings held on homes built by Reliant. One of the two houses sold had a Jones Carpet lien of $79 against it. The other liens were on other properties.

The two witnesses who testified at trial were not sure if the thirteen liens which were not on the specific properties closed were liens on previously sold homes or homes which had not yet been sold. The witnesses called were the attorney who handled the two closings and a representative of Jones Carpet.

The trustee offered as evidence the bankruptcy schedules of Reliant Contractors which showed lots and homes owned by Reliant at the time of its bankruptcy filing. The schedules are broken down into three types of property: (1) lots owned by Reliant ("lots"), (2) properties under construction or completed, and (3) several other miscellaneous pieces of property (an office building, duplex and house). When the Court first reviewed the testimony and exhibits, it did not seem clear that the first group of "lots" were unimproved ones. If the "lots" included improved homesites, then the debtor may well have owned at the filing of the bankruptcy some of the lots upon which Jones Carpet liens were paid off. The schedules do not state the lot number of every "lot" Reliant held at filing. The "lots" are lumped together in some instances and the schedules show equity in some of the parcels. If the "lots" did not include the parcels that had Jones Carpet's liens against them, then the lots had been sold before the bankruptcy and Reliant was paying off debts that were unsecured as to Reliant. The liens may still have been attached to the properties, but, if Reliant had deeded the property to a third party, the debts were not secured by any Reliant assets when paid.

### LAW

#### A.

Did Reliant pay off liens on properties it still owned on October 2, 2000 when it paid Jones Carpet $24, 821.18 or did it pay off liens on previously sold properties? The schedules are not without some ambiguity. The first group of "lots" is not very well defined. When the Court first looked at the schedules, it seemed that the trustee had not proved her case. There was equity in the "lots" and the "lots" may have included the ones with the liens at issue. However, the Court has now had a chance to review the schedules after a further argument as to the meaning of the schedules by the trustee's counsel. No new evidence was presented, only the trustee's interpretation of the schedules that had been admitted into evidence. The Court concludes that she erred in her March 21, 2001 ruling. When one looks at the "lots" category as a whole and considers the

---

1. This Court incorporates by reference the findings of fact and conclusions of law made orally on the record and incorporated into the judgment of March 21, 2001.

values placed on each lot, it is clear that the "lots" are not improved real estate upon which Jones Carpet would have done any carpet or vinyl installations. The lots are valued at prices of $20,000–40,000 per lot. The second category of property includes all of the improved real estate which Reliant had for sale. The liens which Reliant paid were not attached to any of these lots. The Court had focused more heavily on the testimony of the two witnesses who testified that they did not know whether the liens were on sold or unsold lots. Before the first ruling, the Court did not review as carefully as it did the second time the schedules and attached exhibit.

■ The schedules, as now interpreted, support the trustee's position that the lien payoffs were preferential. The trustee has sustained her burden of proof under 11 U.S.C. § 547(b)(5). The liens paid on October 2, 2000 were liens on lots previously sold except for one $79 lien. Since the thirteen homes were sold with liens intact, the liens follow the property. Any claim Jones Carpet had against Reliant became an unsecured claim when the real estate was sold. Therefore, on October 2, 2000, Jones Carpet had thirteen unsecured and one secured claim against Reliant. Paying thirteen unsecured claims in full enabled Jones Carpet to receive more than other unsecured creditors in this chapter 7 case based on the debtor's schedules and the presumption of insolvency. 11 U.S.C. § 547(f).

### B.

The Court now needs to review the defendants' defenses. The defendants filed a motion to amend their answer to include two defenses: ( 1) that their liens were unavoidable statutory liens and their payment was not preferential; and (2) that the funds were really funds of the title compa-

ny and not the debtor's funds. The Court grants the motion. At trial, the defendants also argued that the payoffs were contemporaneous exchanges for value. The Court will consider each defense in turn.

### 1.

■ Jones Carpet's first defense is that of 11 U.S.C. § 547(c)(6). It states that a transfer is not preferential if the transfer is "the fixing of a statutory lien that is not avoidable under section 545 of this title." The defense is not applicable to this case. The transfer which the trustee seeks to avoid is not the filing and perfection of Jones Carpet's liens. It is the payment of the money to Jones Carpet. The liens remain intact against the property. Reliant, however, did not own the property when the liens were paid. Therefore, the payment was a payment of an unsecured debt and preferential.

### 2.

■ The second defense is that the funds were not the debtor's funds. Jones Carpet asserts that the funds were property of the Estate Title Company, the company which conducted the two real estate closings. The checks payable to Jones Carpet were paid from an Estate Title Company account. Jones Carpet argues that this shows that the money was not property of the debtor's estate and, therefore, the payment is not a transfer of the debtor's property at all.

The evidence was that the money used by Estate Land Title and Kenneth R. Fountain, P.A. to pay the fourteen liens came from the revenues paid to Reliant from the sale of two homes. Reliant directed Kenneth Fountain to pay the liens. The money was placed in a trust account at closing, not an account solely for the benefit of Estate Land Title or Kenneth

Fountain. Therefore, the evidence does not support any conclusion except that the money was property of the debtor's estate.

### 3.

The third defense of Jones Carpet is that the transfer was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor [ ] and [ ] in fact [was] a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(91). "New value" is defined to include "goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the ... trustee under any applicable law." 11 U.S.C. § 547(a)(2). Jones Carpet asserts that Reliant's payment to it was a payment which released liens against property of the Debtor, or was a payment for carpet installation which occurred substantially contemporaneously with the payment.[2]

■■■■ The purpose of 11 U.S.C. § 547(c)(1), the "new value" defense, is to protect transactions that do not diminish a debtor's estate. *In re Martin*, 184 B.R. 985 (M.D.Ala.1995), aff'd 101 F.3d 708 (11th Cir.1996). A payment to a creditor for some new value which leaves the creditor with the same debt amount as before is not a preference.

■■ The release of Jones Carpet's liens is not "new value." Why? Because the liens were on property not owned by Reliant at release. Therefore, Jones Carpet was paid $24,742.18 on unsecured claims. Reliant's estate was diminished by that amount. The liens on the property did not affect Reliant's estate. Reliant already had the sales proceeds for those homes. At best, the home buyers had unsecured

claims against Reliant. *In re Empire Pipe & Development, Inc.*, 152 B.R. 339 (Bankr. M.D.Fla.1993) (lien release on homeowner's property is not new value). Therefore, since Reliant's estate was diminished by $24,821.18, there is no new value defense, at least as to the 13 prior liens. Reliant was worse off by $24,742.18 and Jones Carpet was better off. The payment did not preserve the status quo.

### 4.

■■ As to the one property upon which Jones Carpet released the $79 lien at closing, it is not a preference. Since the lien was fully secured, the transaction did not result in Jones Carpet receiving more than it would in a chapter 7.

### CONCLUSION

Jones Carpet, by not receiving payment of thirteen liens at closing of the home sales, lost its status as a secured creditor as to Reliant. Therefore, when the liens were paid, the payments were preferences. No defenses apply to these payoffs. Only the $79 payment on the lien on one property which was actually paid at closing is not preferential.

IT IS ORDERED:

1. The motion of the trustee for reconsideration is GRANTED.

2. Judgment is awarded to plaintiff, Sherry F. Chancellor, Trustee, against Jones Carpet and Rug Gallery, Inc., and Jones Carpet Mart, Inc. in the amount of $24,742.18.

■■■■■■

---

**2.** The Court is not exactly sure which theory

is at issue.